CLERK'S OFFICE U.S. DIST. COURT
AT HARRISONBURG, VA
FILED
6/26/2019
JULIA C. DUDLEY, CLERK
BY: s/ J. Vasquez
    DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | |
|---|---|
| TECHINT SOLUTIONS GROUP, LLC, | ) |
| Plaintiff, | ) |
| v. | ) Civil Action No. 5:18-cv-00037 |
| | ) By: Elizabeth K. Dillon |
| BRANDON SASNETT, *et al.*, | )     United States District Judge |
| Defendants. | ) |

**MEMORANDUM OPINION**

Pending before the court is defendant Scott Crino's motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). (Dkt. No. 131.)[1] In it, he seeks dismissal of all four counts against him: Count II—a claim for tortious interference; Count IV—a conspiracy claim; Count V—aiding and abetting breach of fiduciary duty; and Count VI—a separate count of injunctive relief. For the reasons discussed herein, the court will deny the motion to dismiss.

I.  BACKGROUND

The court will dispense with a detailed description of the facts alleged in the amended complaint. Instead, important relevant facts will be discussed in context below. In broad terms, though, the amended complaint asserts claims by TechINT Solutions Group, LLC against its former employee and previous part owner, Brandon Sasnett, and against the CEO of Red Six, Crino, who was allegedly involved in hiring Sasnett to work for Red Six. Red Six, a former customer and allegedly now a competitor of TechINT's, was initially named as a defendant, but

---

[1] Contained within the same document is a motion to dismiss under Rule 12(b)(1) for lack of jurisdiction. In a prior opinion and order, the court denied that motion to the extent it sought Crino's dismissal. (Dkt. Nos. 169, 170.)

was dismissed by prior order of the court in order to preserve the court's subject-matter jurisdiction, which is premised on diversity.

Shortly after Sasnett's hiring by Red Six, TechINT advised Crino that Sasnett had a Services Agreement that barred him, for a term of two years after his employment with TechINT ended, from providing the same services TechINT provided to its actual clients and certain prospective clients and also barred him from soliciting TechINT employees. Even after Crino learned of that agreement and received a copy of it, Red Six continued to employ Sasnett. According to the amended complaint, Sasnett, while employed with Red Six, is performing the same services he performed for TechINT, in violation of the restrictive covenants in his Services Agreement. This includes performing services for a number of TechINT clients or former clients. Lastly, TechINT alleges that Sasnett, on behalf of Red Six and again in violation of his Services Agreement, solicited another TechINT employee, Archie Stafford, who abruptly left TechINT and began working for Red Six.[2]

The claims in the amended complaint are:

> Count I: a breach of contract claim for breach of the Services Agreement (against Sasnett only);
> Count II: tortious interference with contract and business expectancies (against Sasnett and Crino);
> Count III: conversion (against Sasnett only);
> Count IV: conspiracy (against Sasnett and Crino);
> Count V: breach of fiduciary duty and aiding and abetting breach of fiduciary duty (against Sasnett and Crino); and
> Count VI: injunctive relief enforcing the terms of Sasnett's Services Agreement and ordering all defendants to "cease any further unlawful activity."

(Am. Compl., Dkt. No. 120.) Additional relevant facts will be discussed in context.

---

[2] The amended complaint also includes allegations about Sasnett's failure to return certain property that belonged to TechINT before or after his resignation, but TechINT does not appear to rely on those allegations in responding to the motion to dismiss.

## II. DISCUSSION

### A. Legal Standards for a Motion to Dismiss Pursuant to Rule 12(b)(6)

A motion to dismiss under Rule 12(b)(6) challenges the legal sufficiency of a plaintiff's complaint to determine whether it has properly stated a claim. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. To survive a motion to dismiss, the complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief" and sufficient "[f]actual allegations . . . to raise a right to relief above the speculative level . . . ." *Twombly*, 550 U.S. at 555 (internal quotation marks omitted). Therefore, the complaint must "allege facts sufficient to state all the elements of [the] claim." *Bass v. E.I. Dupont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003). Although "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations," a pleading that merely offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

### B. Count II: Tortious Interference with Contract and Business Expectancies

Crino first asserts that the amended complaint fails to state a claim for tortious interference with contract and business expectancies in Count II. To state such a claim under Virginia law, TechINT must plausibly allege: (1) the existence of a valid contractual relationship or business expectancy; (2) knowledge of the relationship or expectancy on the part of Crino; (3)

intentional interference including or causing the breach of termination of the relationship or expectancy; and (4) resulting damages to TechINT. *See Int'l Union, United Mine Workers of Am. v. Covenant Coal Corp.*, 977 F.2d 895, 899 (4th Cir. 1992).

Crino offers only one argument for dismissal of Count II. Specifically, he argues that dismissal is proper because the amended complaint does not assert that he was acting as anything other than Red Six's CEO. (Mem. Supp. Mot. Dismiss 7, Dkt. No. 132.) From this, he posits that TechINT has failed "to allege sufficient facts to establish that Crino, in his individual capacity, intentionally interfered with TechINT's contracts." *Id.*

The fact that Crino was acting as Red Six's CEO, however, does not insulate him from personal liability. It is well-established in Virginia that an agent acting within the scope of his employment can nonetheless be liable for his own torts. *VanBuren v. Grubb*, 733 S.E.2d 919, 923 (Va. 2012) ("It has long been settled in Virginia that employer and employees are deemed to be jointly liable and jointly suable for the employee's wrongful act.") Thus, this argument is of no assistance to Crino and does not require the dismissal of Count II.

**C. Count IV: Conspiracy**

In Count IV, TechINT alleges violations of the Virginia Business Conspiracy Act, Virginia Code §§ 18.2–499 and 500. To recover under those statutes against Crino, TechINT must prove, by clear and convincing evidence, that: (1) Crino conspired with at least one other person to harm TechINT; (2) at least one co-conspirator acted with legal malice toward TechINT; and (3) the conspiratorial actions of Crino and one or more of the other co-conspirators caused TechINT to suffer damages. *See Multi-channel TV Cable Co. v. Charlottesville Quality Cable Operating Co.*, 108 F.3d 522, 526, 527 (4th Cir. 1997); *see also*

*Allen Realty Corp. v. Holbert,* 318 S.E.2d 592, 596 (Va. 1984); *Va. Vermiculite, Ltd. v. W.R. Grace & Co.-Conn.*, 144 F. Supp. 2d 558, 601 (W.D. Va. 2001).

Crino argues that the business conspiracy claim must be dismissed for two independent reasons: (1) Crino, Red Six, Sasnett, and Archie Stafford cannot conspire because they are all part of the same corporation and therefore protected by the intracorporate immunity doctrine; and (2) the allegations against Crino individually are too vague and conclusory to support a conspiracy claim. The court finds both of these arguments wanting at this stage of the case.

First, with regard to the intracorporate immunity doctrine, it is true that a single entity generally cannot conspire with itself. *ePlus Tech, Inc. v. Aboud*, 313 F.3d 166, 179 (4th Cir. 2002) ("[U]nder the intracorporate immunity doctrine, acts of corporate agents are acts of the corporation itself, and corporate employees cannot conspire with each other or with the corporation."). So, to the extent certain allegations in the complaint occurred while the alleged co-conspirators were all working for Red Six and within the scope of their employment for Red Six, they cannot have conspired.

But some of the amended complaint's allegations do not fall within those parameters. Instead, as TechINT correctly notes, the amended complaint plausibly alleges that Sasnett and Crino began conspiring *before* Red Six hired Sasnett (Am. Compl. ¶¶ 33–34) and plausibly alleges that while at Red Six, Sasnett conspired further with Stafford *before* Red Six hired him (*Id.* ¶¶ 43, 54). Most specifically, the amended complaint alleges that in the month or so preceding Sasnett's resignation, he and Crino were interacting with regard to services being provided by TechINT to Red Six, including preparations to provide services under a purchase order from Red Six. Then, the day before he resigned, "Sasnett inquired with Crino about potential employment with Red Six" [and] "Crino informed Sasnett that Red Six would

5

'absolutely' be interested in employing Sasnett." (*Id.* ¶ 33.) Additionally, less than one week after Sasnett started working for Red Six (whether as an independent contractor or an employee), Red Six cancelled the purchase order that it had with TechINT. As noted, Sasnett had been working with Red Six and with Crino on the services to be provided under that purchase order, and TechINT alleges that "Red Six has employed or engaged Sasnett to provide the UAS services previously provided by TechINT." (*Id.* ¶¶ 34, 36.) Since "joining Red Six, Sasnett has provided competitive services to at least eight clients of TechINT in violation of his Services Agreement." (*Id.* ¶ 41.) The "reasonable inferences" from all of these facts, taken together, render it plausible that any conspiracy began before Sasnett was hired.

Crino's second argument as to the conspiracy count is similarly infirm. He contends that the allegations in the complaint are too bald and conclusory to satisfy *Iqbal* and *Twombly* because they allege a conspiracy only in a conclusory manner. A civil conspiracy claim fails if the plaintiff fails to allege *any* factual content or with any specificity "the persons who agreed to the alleged conspiracy, the specific communications amongst the conspirators, or the manner in which any such communications were made." *See Darton Env'tl, Inc. v. FJUVO Collections, LLC*, 332 F. Supp. 3d 1022, 1036 (W.D. Va. 2018).

In considering this argument, though, the court also is mindful of the fact that plausible inferences from the facts alleged must be drawn in TechINT's favor. Given the clandestine nature of a conspiracy, moreover, often the evidence of agreement or concerted action "may be inferred from the things actually done." *Frey & Son, Inc. v. Cudahy Packing Co.*, 256 U.S. 208, 219 (1921); *see also Robertson v. Sea Pines Real Estate Cos.*, 679 F.3d 278, 289–90 (4th Cir. 2012) (concluding that where actions were actually taken in concert, it is not necessary to present other evidence of an agreement). To suffice, the allegations must simply "reasonably lead to the

inference that the alleged conspirators positively or tacitly came to a mutual understanding to try to accomplish a common and unlawful plan." *Fed Ins. Co. v. Locash*, No. 2:12cv504, 2014 WL 12588635, at *9 (E.D. Va. Feb. 18, 2014).

Having reviewed the allegations of the amended complaint, the court concludes that the amended complaint contains sufficiently specific facts to satisfy that standard. As noted above, the amended complaint alleges that Crino and Sasnett began discussing Sasnett's employment with Red Six and his departure from TechINT the day before he resigned. It also alleges that, within a week afterward, Red Six cancelled its purchase order with TechINT and instead began using Sasnett to perform the same services he would have performed under the purchase order as a TechINT employee. It further alleges that Sasnett, as an employee of Red Six, has provided "competitive services to at least eight clients of TechINT in violation of his Services Agreement." (Am. Compl. ¶ 41.) Those facts, especially when coupled with the remaining allegations in the amended complaint, are sufficient to state a conspiracy claim.

**D. Count V: – Claim of Aiding and Abetting Breach of Fiduciary Duty**

Next, Crino alleges that Count V is deficient as to him because: (1) it is unclear if the tort of aiding and abetting breach of fiduciary duty even exists in Virginia, but it has certainly not yet been recognized; and (2) it fails to allege that Crino was acting in his "individual capacity." As to the second of those arguments, the court has addressed it above. For the reasons already discussed, that argument is not persuasive. *See supra* Section II.B. In sum, an agent is individually or personally liable for the torts he commits even in the scope of his employment. The fact that he acted within the scope of his employment simply means that his employer can also be held vicariously liable.

As to Crino's first argument, it appears that there is some question as to whether this tort, at least as it is named, exists in Virginia. As explained by another court:

> Accurately stated, the Supreme Court of Virginia has refrained from either recognizing or rejecting a separate "aiding and abetting" tort. *See, e.g., Halifax Corp. v. Wachovia Bank,* 268 Va. 641, 604 S.E.2d 403, 411–12 (Va.2004). Reviving Virginia precedent from more than 100 years ago, Alliance cites *Patteson v. Horsley,* 70 Va. 263 (1877), for the proposition that "one who aids and abets a third party's breach of fiduciary duty may be held liable for providing such assistance." . . . It is not entirely clear that *Patteson* created a separate tort of "aiding and abetting," but it does appear to recognize joint tortfeasor liability if a defendant: (1) knows about another's duty and breach; (2) participates in it or directs its commission; and, (3) benefits from it. *Patteson,* 70 Va. at 270–71. Even if this claim is not to be treated as a separate tort, it appears to be a viable alternative theory to secure joint liability, and the Court will address it as such for purposes of resolving the pending motion.

*All. Tech. Grp., LLC v. Achieve 1, LLC*, No. 3:12CV701-HEH, 2013 WL 143500, at *4–5 (E.D. Va. Jan. 11, 2013) (internal footnote and citations omitted). This court takes the same approach. Specifically, it believes that this count is "a viable alternative theory to secure joint liability," and will treat it as such here. *See id.*

Crino argues that the amended complaint does not allege that he knew about any duty owed by Sasnett, either as an employee or an owner. (Reply 4, Dkt. No. 143.) Crino correctly notes, for example, that Sasnett was no longer an owner of TechINT as of October 24, 2019, and that the amended complaint does not allege that Crino knew Sasnett was an owner of TechINT prior to that time.[3] The court agrees with Crino that there are not sufficient allegations from which the court could conclude that Crino knew of any fiduciary duty of Sasnett *as an owner*. But that is not dispositive here because Sasnett may have continued to owe TechINT a fiduciary

---

[3] That also happens to be the same date that Crino first learned of Sasnett's Services Agreement, because there is no allegation that he knew of it before then.

8

duty as a former employee, and there are ample allegations that Crino knew of Sasnett's former employment with TechINT.

As Virginia courts have recognized, "[r]esignation or termination does not automatically free a[n][ ] employee from his or her fiduciary obligations." *All. Tech. Grp., LLC*, 2013 WL 143500, at *4 (alterations in original). Instead, an employee continues to owe his former employer a fiduciary duty not to usurp that employer's business opportunities under specific circumstances. *Today Homes, Inc. v. Williams*, 634 S.E.2d 737, 744 (Va. 2006) (citations omitted). This potential liability, however, applies "only for those transactions completed after termination of the [employment relationship], but which began during the existence of the relationship or that were founded on information gained during the relationship." *Id.* "Whether specific conduct taken prior to resignation breaches a fiduciary duty requires a case by case analysis." *Id.*

In this case, the amended complaint alleges that Sasnett made plans, including usurping business opportunities from TechINT, while he was still employed with TechINT. (Am. Compl. ¶¶ 77, 78.) But even if there are no allegations showing that Crino had knowledge of Sasnett's pre-resignation activities, the facts of the complaint plausibly allege that Sasnett violated a fiduciary duty as a *former* employee and that Crino, by continuing to employ Sasnett and by having Sasnett perform work for Red Six and for other prior TechINT clients, participated in that breach. Indeed, the complaint refers to Sasnett performing work not only for Red Six—work that was supposed to be performed by TechINT—but also for "at least eight clients of TechINT." (Am. Compl. ¶ 41.) It also alleges that all defendants were aware of contracts and business expectancies that TechINT had with these clients and that they intentionally interfered with them

9

and induced or caused their termination. (*Id.* ¶ 77.) Taken as a whole, the allegations are sufficient to state a claim against Crino.

For these reasons, the court will deny the motion to dismiss this claim. The court notes, however, that its ruling should not to be taken as an indication of any view of the strength of this claim. It may well be that discovery will not support this claim and that Crino's knowledge will not be able to be established. But on the facts alleged and the reasonable inferences therefrom, plaintiff has sufficiently pleaded this claim to allow it to go forward.

**E. Count VI – Injunctive Relief**

Crino asks for the dismissal of the injunctive relief requested in Count VI (Mem. Supp. Mot. Dismiss 5, Dkt. No. 132), but he does not offer any specific argument for the dismissal of that count. The court presumes that his arguments for dismissal of Count VI are duplicative of his arguments on other counts, *i.e.*, that Count VI should be dismissed because no injunctive relief can be awarded if all the other claims against him are dismissed. Because the court is allowing those claims to go forward, the court will not dismiss the claim for injunctive relief on that basis.

III. CONCLUSION

For the foregoing reasons, the court will deny Crino's motion to dismiss. An appropriate order will be entered.

Entered: June 26, 2019.

*/s/ Elizabeth K. Dillon*
Elizabeth K. Dillon
United States District Judge